**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **KIMBERLY STARLING**, *on behalf of herself and all others similarly situated*, | Civil Case No.: 3:24-cv-1035 |
| *Plaintiff*, | |
| v. | **COMPLAINT - CLASS ACTION** |
| **AMERICAN SELECT PARTNERS, LLC** | |
| *Defendant*. | |

## INTRODUCTION

1.     This action arises out of the marketing practices of Defendant, American Select Partners, LLC ("Defendant" or "ASP") that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and provisions of the Texas Business & Commerce Code.

2.     ASP makes, or has made on its behalf, prerecorded telemarketing calls soliciting health insurance products and services.

3.     ASP makes these calls to individuals on the National Do-Not-Call Registry.

4.     ASP makes these calls to individuals who have previously requested not to be called and to be added to ASP's internal do-not-call list.

5.     Accordingly, Ms. Starling brings this action on behalf of herself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

1

7.    This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a), because they are so closely related to the federal claims that they form a single case or controversy.

8.    This Court has jurisdiction over Defendant because Defendant is headquartered in this District, conducts business transactions in this District and has committed tortious acts in this District.

9.    Venue is proper in this District because Defendant resides within this District and because some of the wrongful conduct giving rise to this case occurred in, was directed from, and/or emanated from this District.

**PARTIES**

10.    Plaintiff Kimberly Starling ("Ms. Starling" or "Plaintiff") is, and at all times mentioned herein was, a citizen and resident of Southlake, Texas.

11.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

12.    Plaintiff is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

13.    Plaintiff is, and at all times mentioned herein was, a "purchaser" as defined by Tex. Bus. & Com. Code § 302.001(3).

14.    Defendant is, and at all times mentioned herein was, a Texas limited liability company headquartered at 15510 Wright Brothers Drive, Addison, Texas 75001.

15.    Defendant may be served via its registered agent, Registered Agents, Inc. located at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

16.    Defendant is, and at all times mentioned herein was, a "person" as defined by 47

U.S.C. § 153 (39).

17.    Defendant is, and at all times mentioned herein was, a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

18.    Defendant is, and at all times mentioned herein was, a "seller" as defined by Tex. Bus. & Com. Code § 302.001(5).

## TCPA BACKGROUND

19.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

### *Prohibition of Prerecorded or Artificial Voice Calls*

20.    Section 227(b) of the TCPA prohibits making ***any*** call (other than a call made for emergency purposes) to a cellular telephone using an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of the called party.  *See* 47 U.S.C. § 227(b)(1)(A).

21.    A violation of section 227(b) carries statutory damages of $500 to $1,500 per call. *See* 47 U.S.C. § 227(b)(3)(B) and (C).

22.    The TCPA's prohibition on the use of artificial or prerecorded voices without the prior express consent of the called party includes the use of "soundboard technology."  *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("FCC Rules"); 35 FCC 14640, 14640-41 (F.C.C., Dec. 18, 2020).

23.    Soundboard technology, also known as "avatar technology," is the use of a digital

library of multiple short, prerecorded messages or sound clips that a soundboard can use to communicate with a called party during a call.

24.    A person or artificial intelligence selects which prerecorded messages or sound clips to play in response to a called party's responses or inquiries.

25.    The Federal Communications Commission ("FCC") has explained that soundboard technology violates the prohibition on using artificial or prerecorded voice messages, even if a live agent is in control of the response:

> **There is no doubt that soundboard technology "uses" a prerecorded voice to deliver a message to the consumer** . . . . As a result, if a live agent initiates the call with a prerecorded voice message using soundboard technology, the caller must obtain the called party's prior express consent.  In other words, the mere presence of a live operator with soundboard technology does not negate the clear statutory prohibition against initiating a call using a prerecorded or artificial voice. **Nowhere does the TCPA text exempt calls where a human selects a prerecorded voice message for the called party**.

FCC Rules at 14644 (emphasis added).

26.    The use of soundboard technology has drawn many consumer complaints.  *See* FCC Rules at 14642-43.

27.    For example, consumers complain that during soundboard calls, the consumers often receive inappropriate or nonsensical responses to their questions or comments, no live telemarketer intervenes to provide a human response when requested to do so, the recorded audio clips that are played do not adequately address their questions, and calls abruptly terminate in response to consumer questions or inquiries for which there is not an appropriate recorded response available.[1]

---

[1]    Letter from Lois Greisman, FTC to Michael Bills (Nov. 10, 2016) https://www.ftc.gov/system/files/documents/advisory_opinions/letter-lois-greisman-associate-

*National Do-Not-Call Registry and Internal Do-Not-Call List*

28.     The TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

29.     These regulations are codified at 47 C.F.R. §§ 64.1200(c)(1-2).

30.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

31.     A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

32.     The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

33.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of ... company-specific do not call systems ...)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* at (c)(1)(A), (E).

34.     Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

---

director-division-marketing-practices-michael-bills/161110staffopsoundboarding.pdf          (last accessed October 25, 2022)

35.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

36.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

37.    These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

38.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

39.    These policies and procedures prohibit a company from making calls for telemarketing purposes[2] unless they have implemented these policies and procedures. 47 C.F.R. § 64.1200(d).

40.    Accordingly, all telemarketing calls violate the TCPA, unless Defendant can

---

[2]  The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

demonstrate that it has implemented the required policies and procedures.

41.    There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

42.    These requirements are separate but cumulative.  In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations. A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

43.    Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 C.F.R. § 64.1200(e).

*Vicarious Liability*

44.    Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls.  *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations").  In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law

principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Netowrk, LLC et al. for Declarator Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

45.    Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability.  Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

## FACTUAL ALLEGATIONS

46.    Ms. Starling is the user of a cellular telephone number ending in 6140.

47.    Ms. Starling's cellular telephone number ending in 6140 is used for residential purposes.

48.    Ms. Starling's telephone number ending in 6140 has been on the National Do-Not-Call Registry since December 31, 2004.

49.    In July of 2021, Ms. Starling received numerous marketing calls made by or on behalf of ASP soliciting her with final expense insurance policies.

50.    Tired of the calls, Ms. Starling engaged with one of the callers on July 27, 2021 and confirmed that ASP was responsible for the calls she was receiving.

51.    On July 27, 2021, Ms. Starling notified ASP, via email, that she was receiving illegal calls from ASP.

52.    ASP advised Ms. Starling that its marketing company placed the calls to Ms. Starling.

53.    Ms. Starling requested that ASP provide her with a copy of ASP's DNC policy.

54. ASP did not provide a copy of the DNC policy as requested.

55. In addition, Ms. Starling requested (in writing) that ASP add her number to its internal Do-Not-Call list at least as early as October 24, 2022.

56. On July 7, 2023, Ms. Starling received a call from telephone number (817) 200-4101.

57. The initial portion of the call used soundboard technology and stated that the call was from the "Medicare Enrollment Center."

58. Ms. Starling interacted with the computer-operated caller and was transferred to ASP during the call.

59. Ms. Starling should not have received this call from ASP or its agent because Ms. Starling's telephone number should have been on ASP's internal Do-Not-Call list.

60. Ms. Starling should not have received this call from ASP or its agent because Ms. Starling never provided ASP or its agent with prior express written consent to call her.

61. On July 11, 2023, Ms. Starling received five calls from ASP as set forth below:

    a. from (888) 219-6894 at 9:21am;

    b. from (888) 799-8065 at 11:10am;

    c. from (888) 319-0355 at 1:04pm;

    d. from (888) 709-1745 at 2:52pm;

    e. from (888) 219-6894 at 4:41pm.

62. Each call left the following prerecorded message: "Hey there. I'm sorry we missed you. If you would like to speak with us, please give us a call back at 1-877-415-0506."

63. On July 12, 2023, Ms. Starling received two calls from ASP as set forth below:

    a. from (888) 246-2993 at 9:00am;

b.  from (888) 610-0840 at 11:41am.

64.    Each call left the following prerecorded message: "Hey there. I'm sorry we missed you.  If you would like to speak with us, please give us a call back at 1-877-415-0506."

65.    On July 12, 2023, Ms. Starling called 877-415-0506 and was connected to "Sonya" with ASP.

66.    Ms. Starling advised Sonya about the prerecorded calls she received.

67.    Sonya advised that the calls were placed by one of ASP's lead companies that places calls on their behalf.

68.    Ms. Starling asked Sonya to place her number on ASP's internal do-not-call list.

69.    Ms. Starling asked Sonya to communicate to the lead company her do-not-call request as well.

70.    Sonya advised Ms. Starling that she would inform her managers of the request.

71.    Ms. Starling did not provide her consent to receive these prerecorded calls from ASP.

72.    ASP's records or the records of third parties will reveal all of the calls ASP made, or had made, to Ms. Starling.

73.    Despite Ms. Starling's requests, ASP continued to call Ms. Starling.

74.    ASP or those otherwise calling on ASP's behalf, did not have written do-not-call policies or procedures at the time of the calls to Ms. Starling and the classes defined below. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented— including as evidenced by the continued calls to Ms. Starling after she directly asked not to be contacted.

75.    Defendant's violations were negligent.

76.    Alternatively, Defendant's violations were willful and knowing.

77.    Ms. Starling and the classes were damaged by the violations alleged herein.  Their privacy was improperly invaded, Defendant's calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the unwanted calls.  The calls were annoying and a nuisance, and wasted the time of Ms. Starling and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## DEFENDANT'S LIABILITY

78.    Defendant uses automated systems to make telephone calls, to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

79.    Certain of these calls utilized an artificial or prerecorded voice in violation of 47 U.S.C. § 227(b).

80.    For violations of 47 U.S.C. § 227(b), Ms. Starling is entitled to a minimum of $500 per call.  *See* 47 U.S.C. § 227(b)(3)(B).

81.    Ms. Starling is entitled to $1,500 per call if ASP's actions are found to be knowing or willful. See 47 U.S.C. § 227(b)(3)(C).

82.    In addition, ASP, made two or more telephone solicitations to Ms. Starling, whose number was on the National Do-Not-Call Registry at the time of the calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

83.    Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Starling is entitled to $500 per call through 47 U.S.C. § 227(c).

84.     Ms. Starling is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

85.     ASP made two or more telemarketing calls to Ms. Starling despite not having in place the required policies and procedures prior to making such calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

86.     Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Starling is entitled to an additional $500 per call through 47 U.S.C. § 227(c).

87.     Ms. Starling is entitled to an additional $1,500 per call if Defendant's actions are found to be knowing or willful.

88.     In addition, pursuant to § 305.053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both.

89.     As set forth above, Defendant violated 47 U.S.C. § 227, or a regulation adopted under that provision.

90.     Accordingly, Plaintiff is entitled to a permanent injunction, and the greater of $500.00 for each violation or Plaintiff's actual damages for each call made by Defendant. *See* Tex. Bus. & Com. Code § 305.053(b).

91.     Plaintiff is entitled to an additional $1500 per call if Defendant's actions are found to be knowing or intentional. *See* Tex. Bus. & Com. Code § 305.053(c).

92.     In addition, pursuant to § 302.101 of the Texas Business & Commerce Code, a seller is prohibited from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of

the Secretary of State for the business location from which the solicitation is made.

93.     Defendant violated § 302.101 of the Texas Business & Commerce Code when it engaged in telephone solicitation without obtaining a registration certificate from the Office of the Secretary of State.

94.     Accordingly, for violations of § 302.101 of the Texas Business & Commerce Code, Plaintiff is entitled to an award of no more than $5,000 for each violation pursuant to § 302.302(a) of the Texas Business & Commerce Code.

95.     In addition, pursuant to § 302.302(d) of the Texas Business & Commerce Code, Plaintiff is entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## CLASS ACTION ALLEGATIONS

96.     Ms. Starling brings this action under Fed. R. Civ. P. 23 on behalf of three "Classes," defined as follows:

## THE TCPA CLASSES

Plaintiff and all persons within the United States who from four years prior to the filing of this action through class certification Defendant (or an agent acting on behalf of Defendant) called  using an artificial or prerecorded voice message for the same purpose Plaintiff was called.

("Prerecorded Class")

Plaintiff and all persons within the United States to whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls and/or text messages in a 12-month period when the telephone number to which the telephone calls or texts were made was on the National Do-Not-Call Registry for more than 30 days at the time of the calls/texts, from four years prior to the filing of the Complaint through class certification.

("Registry Class")

Plaintiff and all persons within the United States whose telephone number Defendant placed (or had placed on its behalf) two or more telemarketing calls and/or text messages in a 12-month period.

("Policy Class")

## TEXAS CLASSES

Plaintiff and all residents of the State of Texas to whose telephone number Defendant placed (or had placed on its behalf) a telephone solicitation when Defendant did not hold a registration certificate as required by Tex. Bus. & Com. Code § 302.101.

("Texas § 302.101 Class")

Plaintiff and all residents of the State of Texas to whose telephone number Defendant: (1) placed (or had placed on its behalf) a call in violation of 47 U.S.C. § 227(b) or (2) Defendant placed (or had placed on its behalf) a call in violation of 47 U.S.C. § 227(c).

("Texas § 305.053 Class")

(The Prerecorded Class, the Registry Class, the Policy Class, the Texas § 302.101 Class and the Texas § 305.053 Class are collectively referred to herein as the "Classes.")

97.    Excluded from the Classes are Defendant and any entities in which Defendant has a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

98.    The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

99.    The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and/or third parties maintain written and electronically stored data showing:

a.    The time period(s) during which Defendant made its calls;

14

b.    The telephone numbers to which Defendant called;

c.    The telephone numbers for which Defendant had prior express written consent;

d.    The purposes of such calls; and

e.    The names and addresses of Class members.

100.    The Classes are comprised of hundreds, if not thousands, of individuals.

101.    There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

a.    Whether Defendant (or someone acting on its behalf) makes telemarketing calls;

b.    Whether Defendant (or someone acting on its behalf) obtains prior express written consent;

c.    Whether Defendant or the entity with which it contracts makes solicitation calls to telephone numbers registered on the National Do-Not-Call Registry;

d.    Whether Defendant had the requisite registration certificate as required by Tex. Bus. & Com. Code § 302.101 when making telephone solicitations;

e.    Whether Defendant had the required policies and procedures prior to making telemarketing calls;

f.    Whether Defendant's statutory violations were willful and knowing; and

g.    Whether Defendant should be enjoined from engaging in such conduct in the future.

102.    Plaintiff is a member of the Classes in that Defendant made two or more prerecorded calls for telemarketing purposes, in a one-year period to her telephone number,

without her prior express written consent, after he asked Defendant to stop, and while her telephone number was on the National Do-Not-Call Registry.

103.    Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

104.    Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

105.    Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

106.    Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

107.    Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

108.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

109.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

110.    Common questions will predominate, and there will be no unusual manageability issues.

## FIRST CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. §227(b)
### (On behalf of Plaintiff and the Prerecorded Class)

111.    Ms. Starling and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

112.    ASP placed, or had placed on its behalf, prerecorded telephone calls to Ms. Starling's and Class Members' telephone numbers without prior express consent.

113.    The calls were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b).

114.    ASP has therefore violated 47 U.S.C. § 227(b).

115.    As a result of ASP's unlawful conduct, Ms. Starling and the Class Members are entitled to an award of $500 in statutory damages for each call, pursuant to 47 U.S.C. § 227(b)(3)(B).

116.    Ms. Starling and the Class Members are entitled to an award of treble damages in an amount up to $1,500 for each call made knowingly and/or willfully, pursuant to 47 U.S.C. § 277(b)(3).

## SECOND CAUSE OF ACTION
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the Registry Class)

117.    Ms. Starling and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

118.    ASP made, or had made on its behalf, calls constituting telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

119.    Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

120.    Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

121.    Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

122.    Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

**THIRD CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On behalf of Plaintiff and the Policy Class)**

123.    Ms. Starling and the proposed Classes incorporate the foregoing allegations as if fully set forth herein.

124.    Defendant made numerous calls for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

125.    Defendant did so despite not having a written policy pertaining to "do not call" requests.

126.    Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list or policy.

127.    Defendant did so despite not recording or honoring "do not call" requests.

128.    Defendant made two or more telemarketing calls to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

129.    Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages per telephone call pursuant to 47 U.S.C. § 227(c)(5).

130.    Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 per telephone call, pursuant to 47 U.S.C. § 227(c)(5).

**FOURTH CAUSE OF ACTION**
**Violations of Texas § 302.101**
**(On Behalf of Plaintiff and the Texas § 302.101 Class)**

131.    Plaintiff and the proposed Texas § 302.101 Class incorporate the foregoing allegations as if fully set forth herein.

132.    Defendant failed to obtain a registration certificate from the Office of the Secretary of State pursuant to violated § 302.101 of the Texas Business and Commerce Code.

133.    Defendant placed, or had placed on its behalf, telephone solicitations to Plaintiff's and Texas § 302.101 Class Members' telephone numbers.

134.    Defendant's telephone solicitations were made from a location in Texas or to a Plaintiff and Texas § 302.101 Class Members located in Texas.

135.    Plaintiff and Texas § 302.101 Class Members are entitled to an award of up to $5000 for each violation and all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

**FIFTH CAUSE OF ACTION**
**Violations of Texas § 305.053**
**(On Behalf of Plaintiff and the Texas § 305.053 Class)**

136.    Plaintiff and the proposed Texas § 305.053 Class incorporate the foregoing allegations as if fully set forth herein.

137.    Defendant placed, or had placed on its behalf, in a 12-month period more than one prerecorded telemarketing telephone calls to Plaintiff's and Texas § 305.053 Class Members' telephone numbers.

138.    Each of these calls violated 47 U.S.C. § 227(b) and/or 47 U.S.C. § 227(c).

139.    Plaintiff and Texas § 305.053 Class Members are entitled to:

    a.   a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305;

    b.   the greater of $500 for each violation or Plaintiff's and Texas § 305.053 Class Members' actual damages (*see* Tex Bus. & Com. Code §304.053(b); and

    c.   the greater of $1,500 for each violation or Plaintiff's and Texas § 305.053 Class Members' actual damages for each call made knowingly or intentionally (*see* Tex. Bus. & Com. Code §304.053(c).

<strong>PRAYER FOR RELIEF</strong>

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing her counsel as Class Counsel;

B.    An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.    An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.    An award of statutory damages;

E.    An award of treble damages;

F.    An award of reasonable attorneys' fees and costs, including the costs set forth pursuant to Tex. Bus. & Com. Code § 302.302(d);and

G.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

By: _____ */s/ Chris R. Miltenberger* _____
      Chris R. Miltenberger
      Texas Bar Number: 14171200

**The Law Office of Chris R.
Miltenberger, PLLC**

1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Max S. Morgan, Esq.
**The Weitz Firm, LLC**
1515 Market
Suite 1100
Philadelphia, PA 19102
Max.morgan@theweitzfirm.com

***Attorneys for Plaintiff and the
putative class***